IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

DAVID LANGE                                                                    PLAINTIFF

v.                                    Case No. 3:25-cv-00297-KGB

HENNEPIN COUNTY, MINNESOTA, *et al.*                                          DEFENDANTS

## ORDER

Before the Court is plaintiff David Lange's *pro se* complaint and application to proceed *in forma pauperis* ("IFP") without prepaying fees or costs (Dkt. Nos. 1; 2).  Also before the Court is Lange's consolidated motion for a preliminary injunction, to assume supplemental jurisdiction, and for a temporary restraining order, with request for expedited consideration ("First Motion for Preliminary Injunction") (Dkt. No. 5) and consolidated emergency motion for preservation order, for anti-interference injunction, and for an expedited discovery conference ("Second Motion For Preliminary Injunction") (Dkt. No. 10).  For the following reasons, the Court grants Lange's application to proceed without prepaying fees or costs (Dkt. No. 1), dismisses without prejudice his complaint (Dkt. No. 2), denies Lange's First Motion for Preliminary Injunction (Dkt. No. 5), and denies Lange's Second Motion for Preliminary Injunction (Dkt. No. 10).  In making its decisions, the Court has reviewed the entire record in this matter.

I.    **IFP Application**

Under 28 U.S.C. § 1915, the decision to grant or deny an application to proceed without prepaying fees or costs is within the sound discretion of the district court.  *Cross v. General Motors Corp.*, 721 F.2d 1152, 1157 (8th Cir. 1983) (citations omitted).  Although a claimant need not be "completely destitute" to take advantage of the IFP statute, he must show that paying the filing fee

would result in an undue financial hardship. *In re Williamson*, 786 F.2d 1336, 1338 (8th Cir. 1986).

Lange states that his take-home wages are between $500.00 and $750.00 per month (Dkt. No. 1, at 1). Lange represents that he has $1,500.00 in cash or in a checking or savings account (*Id.*, at 2). Lange lists monthly automobile expenses as $513.00, child support expenses as $600.00, and insurance as $475.00 (*Id.*). Based on the record as a whole, given that his reported monthly expenses exceed his reported monthly take-home pay or wages, the Court grants Lange's application to proceed IFP without prepaying fees or costs (*Id.*).

II.    **Screening**

Lange is not incarcerated pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915. However, the Court must screen Lange's complaint to determine whether it is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2); *Key v. Does*, 217 F. Supp. 3d 1006, 1007 (E.D. Ark. 2016) ("Although some district courts have limited section 1915(e)(2)(B)(ii) pre-service dismissal to litigants who are prisoners, . . . all of the circuit courts to address the issue have held that nonprisoner complaints can be screened and dismissed pursuant to section 1915(e)(2)(B).") (citing *Michau v. Charleston City, South Carolina*, 434 F.3d 725, 728 (4th Cir. 2006); *Lister v. Department of Treasury*, 408 F.3d 1309, 1312 (10th Cir. 2005); *Lopez v. Smith*, 203 F.3d 1122, 1126 n.7 (9th Cir. 2000); *McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997) *overruled on other grounds by LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013)).

Lange's complaint invokes federal question jurisdiction pursuant to 28 U.S.C. § 1331 for alleged violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C.

§ 1962 (c), (d)  and for a conspiracy to deprive civil rights in violation of 42 U.S.C. § 1985(3) (Dkt. No. 2, at 2).  Lange also purports to bring claims for "Malicious prosecution, Fabrication of Evidence, Conscience-Shocking Abuse of Process, [and] Retaliatory Prosecution" under 42 U.S.C. § 1983 (*Id.*).  In addition to his federal claims, Lange alleges state law claims including "Civil Conspiracy, Malicious Prosecution, Fraud, Conversion, Tortious Interference with Business Expectancy, [and] Intentional Infliction of Emotional Distress" (*Id.*).

### III.    Factual Background

First, Lange alleges that, almost ten years ago, Hennepin County, Minnesota, officials subjected Lange "to a malicious prosecution built on suppressed evidence" (*Id.*, at 12).  Lange asserts that the "original complainant[']s brother was a jailed white supremacist in Florida, convicted of murdering two black men" (*Id.*).  Lange alleges that Hennepin County prosecutor Thomas Braesch manipulated Lange's race on warrants "to hide this racially-tainted fraud" by listing Lange as "[w]hite" (*Id.*, at 12–13).  Lange describes himself as black (*Id.*, at 2).  Lange then asserts that, after he entered a plea under duress, prosecutors "retaliatorily added six new felony charges to ensure a prison sentence" (*Id.*, at 13).  While in custody, Lange alleges that his personal computer was seized and returned wiped clean, which previously held the sole digital copy of his exculpatory evidence (*Id.*).

Second, Lange alleges that, in 2020, "upon discovering an illegally filed Washington County case," Lange's business partner Carly Williams demanded that Lange surrender his 40% ownership stake in "Luxury Laser Minnesota / MedSpa Institute of America," a company valued at $10 million (*Id.*).  Upon Lange's refusal to surrender his ownership stake, Lange alleges that Williams filed a false police report which "led to a campaign of police harassment" (*Id.*).  Lange asserts that "[t]his pattern of weaponizing legal process extended to other major projects including

the deliberate collapse of a $20 million wedding venue development . . . and the ruin of a $450,000 real estate project" (*Id.*, at 14).

Third, Lange alleges that, on December 8, 2023, Fonce Chevalier Holding, L.L.C. ("Fonce Holdings") entered a valid real estate contract with Theresa White (*Id.*, at 9). Lange purports to be the managing member of Fonce Holdings (*Id.*). Lange then states that White materially breached the contract with Fonce Holdings by failing to move her property into the required trust, refusing to allow showings by the company-secured realtor Brandon Bruning, and demanding an $82,000 last-minute design change (*Id.*). According to Lange, the contract explicitly required White to transfer her property into a designated trust "as a fundamental condition precedent," but White willfully and deliberately refused to take this step (*Id.*). Lange asserts that, because of White's breach, Fonce Holdings had the lawful right to retain a $58,000.00 deposit as a remedy for the breach (*Id.*, at 10).

Lange alleges that, after the breach, Keith Hines—acting at White's behest—filed a false police report which accused Lange of theft (*Id.*). Lange asserts that Fulton County, Arkansas, investigator John Hutchins obtained a bank record titled "Fonce Chevalier Holdings, L.L.C." that had a notation of "NO DBA GIVEN." (*Id.*). Lange alleges that Hutchins and Fulton County prosecutors Dwayne Plumlee and Drew Smith suppressed this evidence when they prosecuted him (*Id.*). Lange also alleges that Fulton County officials created a second warrant that changed his race from "white" to "black" (*Id.*).

While Lange was released on bail, Lange alleges that the Fulton County Court—at the urging of Plumlee and/or Smith—held Lange in contempt for the actions of his court-appointed attorney (*Id.*, at 11). Lange states that he was then held an additional 45 days for the "race-changed warrant" (*Id.*). Lange alleges that Plumlee timed the arrest for March 7, 2024, which was one day

4

before the closing of a $34 million Cherokee Village development ("Cherokee Village Development") (*Id.*). Lange claims that he was in Minnesota at the time of his arrest—assisting his elderly parents—and that Plumlee lied to a Minnesota Court by stating that Lange had "fled Arkansas," securing Lange's extradition to Arkansas (*Id.*).

While Lange was incarcerated, Lange alleges that his contract with White was rendered void and that on April 7, 2024—approximately four weeks after Lange's arrest—White was under contract to sell her property (*Id.*, at 11). Lange alleges that the realtor of record was Burning, the realtor Fonce Holdings had secured for her (*Id.*). Lange asserts that White realized a profit of $166,000.00 from the sale and received her initial $58,000.00 deposit as a result of a restitution order entered against Lange (*Id.*).

As relief for these alleged wrongful actions, Lange asks: (1) the Court to "vacate, quash, and dismiss with prejudice" his "FTA warrant and the underlying Minnesota case"; (2) the Court to "expunge all criminal records in any state or federal database"; (3) the Court to compel "the appropriate authorities and Defendant Theresa White to repay the total of $15,880" comprised of $5,880.00 paid for bail and $10,000.00 paid in restitution; (4) for the creation of a constructive trust to hold the $435,000.00 in sale proceeds from White's sale of the property; (5) for a declaratory judgment that defendants violated Lange's constitutional and statutory rights and that the Arkansas conviction is null and void; (6) for damages, including compensatory damages, treble damages, and punitive damages; and (7) for the appointment of a ten year federal monitor over prosecutors and law enforcement in Hennepin and Fulton Counties (*Id.*, at 19–21).

IV.     **Analysis**

A.     ***Heck* Bar**

Lange brings his malicious prosecution, fabrication of evidence, retaliatory prosecution, and conscience-shocking abuse of process claims under 42 U.S.C. § 1983.

If a judgment in favor of a prisoner in a § 1983 action would necessarily imply the invalidity of the state conviction, continued imprisonment, or sentence, then no claim for damages lies unless the conviction or sentence is reversed, expunged, or called into question by the issuance of a federal writ of habeas corpus. *Heck v. Humphrey*, 512 U.S. 477, 486–78, (1994). A claim for damages based on the invalidity of the state conviction, continued imprisonment, or sentence "that has not been so invalidated is not cognizable under § 1983." *Id*. at 487.

On October 10, 2025, Lange pled guilty in an Arkansas state court to the crime of theft of property worth more than $25,000.00 under Arkansas law. *State v. David Andrew Lange,* 25CR-24-20. Lange alleges that he is in the process of appealing his conviction in state court, but Lange does not indicate that his conviction has been vacated, expunged, or called into question by the issuance of a federal writ of habeas corpus. Therefore, any § 1983 claim which would necessarily imply the invalidity of Lange's state conviction, continued imprisonment, or sentence is barred by *Heck*. Lange's claims under § 1983 for malicious prosecution, fabrication of evidence, retaliatory prosecution, and conscience-shocking abuse of process all relate to the validity of his state conviction. Thus, Lange's § 1983 claims are barred by the Supreme Court's holding in *Heck*.

To the extent Lange asks the Court to expunge his criminal record and dismiss his warrant in state court, this Court has no jurisdiction under 42 U.S.C. § 1983 to modify a state court order. *Callahan v. Rendlen*, 806 F.2d 795, 796 (8th Cir. 1986) ("The federal district court has no jurisdiction under 42 U.S.C. § 1983 to modify a final order of the state court."); *Harris v. Mo. Court of Appeals, W. Dist.*, 787 F.2d 427, 429 (8th Cir. 1986) ("A state's judicial system is not subject to direct or indirect review in either the federal district courts or the federal courts of

appeal."). Habeas corpus is the sole federal remedy for attacking the validity of a conviction or confinement. *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973). Therefore, Lange fails to state a claim upon which he is entitled to relief under 42 U.S.C. § 1983.

### B.    RICO

18 U.S.C. § 1962(c) makes it unlawful for "any person employed by or associated with any enterprise . . . to conduct or participate . . . in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of an unlawful debt." 18 U.S.C. § 1962(c). "A violation of § 1962(c) requires appellants to show '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Nitro Distrib., Inc. v. Alticor, Inc.*, 565 F.3d 417, 428 (8th Cir. 2009) (quoting *Sedima S.P.R.L. v. Imrex Co.*, 473 U.S. 479 (1985) (footnote omitted)). To state a claim for relief, a plaintiff must allege each of the RICO elements, *Crest Constr. II, Inc. v. Doe,* 660 F.3d 346, 355 (8th Cir. 2011), as to each individual defendant, *Craig Outdoor Adver., Inc. v. Viacom Outdoor, Inc*., 528 F.3d 1001, 1027 (8th Cir. 2008).

"RICO does not cover all instances of wrongdoing." *Crest Constr.,* 660 F.3d at 355. "Rather, it is a unique cause of action that is concerned with eradicating organized, long-term, habitual criminal activity." *Id.* "A RICO claim must be pleaded with particularity under Rule 9(b)." *Id.* "Under Rule 9(b)'s heightened pleading standard, allegations of fraud . . . [must] be pleaded with particularity." *Id.* (quoting *Summerhill v. Terminix, Inc.,* 637 F.3d 877, 880 (8th Cir. 2011) (alteration in original). In other words, "Rule 9(b) requires plaintiffs to plead the who, what, when, where, and how: the first paragraph of any newspaper story." *Id.* To avoid dismissal, the plaintiff must allege "specific instances of racketeering activity within the reach of the RICO statute." *Nettles v. UMB Bank, N.A*., Case No. 03-00082-cv-W-GAF, 2010 WL 11618679, at 3

7

(W.D. Mo. Sept. 13, 2010) (quoting *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 495 (internal quotation marks omitted)).

"A RICO enterprise 'includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity.'" *Crest Constr. II,* 660 F.3d at 354 (quoting 18 U.S.C. § 1961(4)).  To assert the existence of an association-in-fact enterprise, the Supreme Court requires three criteria to be satisfied:  "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose."  *Boyle v. United States*, 556 U.S. 938, 946 (2009).  However, acts taken "independently and without coordination" cannot establish the existence of an enterprise.  *Id*. at 947 n.4; *see Target Corp. v. LCH Pavement Consultants, LLC*, Case No. 12-cv-1912 (JNE/JJK), 2013 WL 2470148, at 4 (D. Minn. June 7, 2013) ("[A]n association-in-fact enterprise requires more than parallel conduct; it requires relationships among those associated with the enterprise, and it requires those associated with the enterprise to function as a unit, that they be put together to form a whole.") (citing *In re Ins. Brokerage Antitr. Litig.*, 618 F.3d 300, 374 (3d Cir. 2010)).

Here, Lange fails to allege with specificity any relationship between the parties associated with his prosecution almost ten years ago in Minnesota—Hennepin County, Minnesota; Hennepin County Attorney's Office; Hennepin County Sheriff's Office; and Thomas Braesch—and the parties associated with the events occurring in 2023 in Arkansas.  Lange does not explain the "who, what, when, where, and how" these parties conspired with one another or with any other party.  Therefore, Lange's RICO claims against Hennepin County, Hennepin County Attorney's Office, Hennepin County Sheriff's Office, and Thomas Braesch fail to state a claim upon which relief can

be granted since Lange does not plead with specificity any relationship between the parties which could be considered an enterprise under RICO.

As to the remaining defendants—Fulton County, Arkansas; Fulton County Prosecutor's Office; Dwayne Plumlee; Drew Smith; John Hutchins; Judith Cole; Theresa White; Keith Hines; and Brandon Bruning—Lange's allegations connecting the defendants also fail to assert a relationship between the defendants that constitutes a RICO enterprise. Here, Lange alleges that: (1) he and White had a contract dispute; (2) Hines purportedly filed a police report accusing Lange of theft; (3) Hutchins, Plumlee, and Smith allegedly suppressed a bank record when Lange was prosecuted for theft; (4) the Fulton County Court allegedly held Lange in contempt for actions of his court-appointed attorney; (5) Lange allegedly was arrested in Minnesota and brought back to Arkansas; and (6) White allegedly sold her property when Lange was arrested (Dkt. No. 2, at 9–12). These allegations do not satisfy the heightened pleading standards required to allege a RICO enterprise.

Lange does not allege any details about the duration or nature of the relationship between the parties. *Ybarra v. Legal Assistance of Dakota Cty.*, Case No. 25-cv-1948 (KMM/DTS), 2025 WL 3215659 , at *8 (D. Minn. Nov. 18, 2025) (stating "without any details about the duration or nature of that relationship, this statement is insufficient to allege the connection required to carry his burden here" when the plaintiff's connection between defendants was their alleged participation in his legal proceedings). In fact, Lange alleges no facts regarding coordination between the private individual defendants—White, Hines, and Bruning—and the Arkansas state official defendants—Fulton County, Fulton County Prosecutor's Office, Plumlee, Smith, Hutchins, and Cole—other than that he was arrested on March 7, 2024, which he alleges was the day before the closing of a large deal. Further, while Lange alleges that Hines filed a police report

on White's behalf, he fails to plead any facts as to how the two parties are related or why Hines would act on White's behalf.

Lange fails to plead when or where the parties coordinated, why the real estate deal mattered to any party other than White, or why the defendants would conspire against him. Without more, Lange simply does not satisfy the heightened pleading standard in alleging that the parties acted as an enterprise rather than "independently and without coordination." *Boyle,* 556 U.S. at 946.

Therefore, Lange fails to state a claim upon which relief can be granted under RICO because he fails to plead with specificity the "who, what, where, when, and how" necessary to allege an enterprise acting in violation of RICO.

### C.    Conspiracy To Deprive Civil Rights

Lange brings his conspiracy to deprive civil rights claims pursuant to 42 U.S.C. § 1985(3). To state a claim of conspiracy under § 1985(3), a plaintiff must show:

> (1) the existence of a civil conspiracy; (2) that the purpose of the conspiracy was to deprive her either directly or indirectly of her civil rights; (3) that a conspirator did an act in furtherance of the object of the conspiracy; and (4) damages, shown by demonstrating either injury to person or property or the deprivation of a civil right.

*Mettler v. Whitledge*, 165 F.3d 1197, 1206 (8th Cir. 1999).

Further, plaintiff must allege that the conspiracy was fueled by "class-based, invidiously discriminatory animus." *Andrews v. Fowler,* 98 F.3d 1069, 1079 (8th Cir. 1996) (quoting *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 268, (1993)); *Harrison v. Springdale Water & Sewer Comm'n*, 780 F.2d 1422, 1429 (8th Cir. 1986).  Plaintiff must also "allege with particularity and specifically demonstrate with material facts that the defendants reached an agreement." *Kelly v. City of Omaha*, 813 F.3d 1070, 1077–78 (8th Cir. 2016) (quoting *City of Omaha Emps. Betterment Ass'n v. City of Omaha*, 883 F.2d 650, 652 (8th Cir. 1989)).  This standard requires

that "allegations of a conspiracy [be] pleaded with sufficient specificity and factual support to suggest a meeting of the minds directed toward an unconstitutional action." *Id.*, (alteration in original) (internal citations omitted).

As with Lange's RICO claims, Lange fails to plead "with sufficient specificity and factual support" any facts which "suggest a meeting of the minds directed toward an unconstitutional action" *Id.* Lange's allegations include a range of public and private actors purportedly acting across different states at different times. Lange alleges no facts which suggest that these parties ever coordinated, spoke, or met together to take an unconstitutional action against him. While Lange alleges that these parties "conspired across state lines, [were] motivated by class-based, racially discriminatory animus and inten[ded] to deprive [Lange] of equal protection of the law," his conclusory statements alone are insufficient to state a claim upon which relief can be granted (Dkt. No. 2, at 18). *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.")

Therefore, Lange has failed to state a claim upon which he is entitled to relief under 42 U.S.C. § 1985(3).

### D.   State Law Claims

Having found that Lange has failed to state a claim upon which he is entitled to relief under any of his federal causes of action, the Court declines to exercise supplemental jurisdiction over Lange's state-law claims because no live federal claims remain in this case. 28 U.S.C. § 1367. "'[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point towards declining to exercise jurisdiction over the remaining state-law claims.'" *King v. City of Crestwood, Missouri*, 899 F.3d 643, 651 (8th Cir. 2018) (internal citation omitted). Having already determined that

Lange's federal claims must be dismissed, the Court declines to retain jurisdiction over Lange's state law claims.

### V.    First Motion for Preliminary Injunction

Because Lange has not sufficiently pled his claims to initiate this lawsuit, the Court denies Lange's First Motion for Preliminary Injunction (Dkt. No. 5).  Even if this Court were to evaluate Lange's First Motion for Preliminary Injunction on the merits, the Court would deny the motion on the record before it based on controlling law (*Id.*).

When determining whether to grant a motion for a temporary restraining order or preliminary injunction, this Court considers the same factors:  (1) the movant's likelihood of success on the merits; (2) the threat of irreparable harm to the movant; (3) the balance between the harm to the movant and the injury that granting an injunction would cause other interested parties; and (4) the public interest.  *Kroupa v. Nielsen*, 731 F.3d 813, 818 (8th Cir. 2013) (citing *Dataphase Sys. Inc. v. CL Sys.*, 640 F.2d 109, 114 (8th Cir. 1981)).  Preliminary injunctive relief is an extraordinary remedy, and the party seeking such relief bears the burden of establishing the four *Dataphase* factors.  *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003).  The focus is on "whether the balance of the equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined."  *Id*.  In deciding whether to grant preliminary injunctive relief or a temporary restraining order, likelihood of success on the merits is most significant.  *S.J.W. ex rel. Wilson v. Lee's Summit R-7 Sch. Dist*., 696 F.3d 771, 776 (8th Cir. 2012).

Lange alleges insufficient facts to support his First Motion for Preliminary Injunction (Dkt. No. 5).  In addition to the allegations in his First Motion for Preliminary Injunction, the Court

12

considers Lange's declaration in support (Dkt. No. 6) and second supplemental declaration of support (Dkt. No. 6).

Lange asserts that certain warrants and motions have recently appeared on the docket of his case in Hennepin County (Dkt. No. 5, at 1–2); that his race on warrants was changed between black and white (*Id.*, at 2); that the prosecutor in his case has remained on the case, filed various documents, did not respond to Lange's motions, and made various arguments to the state court, despite Lange suing him in federal court (Dkt. Nos. 5, at 2–3; 8, at 5–712); that the state court has scheduled a hearing in his criminal trial (*Id.*, at 3); that White told him either to "pay the money, or go to prison" (Dkt. Nos. 5, at 4; 7, at 1–3 ); and that the Fulton County prosecutor's office failed to identify which attorney he was suing (Dkt. No. 7, at 2).  Lange also argues in his First Motion for Preliminary Injunction that *Younger* abstention should not apply and that the Court should exercise supplemental jurisdiction over Lange's state law claims (Dkt. No. 5, at 5).

Lange's allegations break no new ground in relation to his § 1983, RICO, or § 1985 claims and fail for the same reasons the Court has already discussed.  Having found that Lange has not stated a claim upon which he is entitled to relief on any of his federal claims, the Court finds that Lange is not likely to succeed on the merits of his claims.  Stated simply, after consider Lange's allegations and the "balance of the equities," the Court declines to grant the "extraordinary remedy" of a temporary restraining order or preliminary injunction in this case given Lange's failure to state a federal claim in which he is entitled to relief.  *Watkins Inc.*, 346 F.3d at 844.  Accordingly, the Court denies Lange's First Motion for Preliminary Injunction (Dkt. No. 5).

### VI.    Second Motion For Preliminary Injunction

In his Second Motion for Preliminary Injunction, Lange asks the Court for emergency relief to "(1) enter a preservation order for all evidence related to the fraud upon the state courts dating

to 2014; (2) enjoin Defendants from interfering with his access to this Court by executing upon known fraudulent warrants; and (3) schedule an immediate conference to expedite merits-based discovery." (Dkt. No. 10, at 1).  The Court has reviewed Lange's allegations in this filing; they do not change the Court's overall analysis with respect to Lange's claims.  Because Lange has not sufficiently stated a claim upon which he is entitled to relief in this lawsuit—and thus is not likely to succeed on the merits so as to be entitled to preliminary injunctive relief—the Court declines to enter any preservation Order in this case or schedule an immediate conference to expedite merits-based discovery (Dkt. No. 10).  For the same reasons, the Court also declines to enjoin Defendants from interfering with the Lange's access to this Court "by executing upon known fraudulent warrants" (*Id.*).  Therefore, Lange's Second Motion for Preliminary Injunction is denied (*Id.*).

## VII.    Conclusion

For the foregoing reasons, the Court grants Lange's motion to proceed IFP (Dkt. No. 1), dismisses his complaint without prejudice (Dkt. No. 2), denies Lange's First Motion for Preliminary Injunction (Dkt. No. 5), and denies Lange's Second Motion for Preliminary Injunction (Dkt. No. 10).  Lange's request for relief is denied.

It is so ordered this 12th day of February, 2026.

Kristine G. Baker
Chief United States District Judge