**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**NORTHERN DIVISION**

**DAVID LANGE** **PLAINTIFF**

**v.** **Case No. 3:25-cv-00297-KGB**

**HENNEPIN COUNTY, MINNESOTA, *et al.*** **DEFENDANTS**

**ORDER**

Before the Court is plaintiff David Lange's proposed amended complaint (Dkt. No. 14), motion for expedited discovery and urgent notice to the Court: the fraud is active, ongoing, and has infected these federal proceedings ("Motion For Discovery") (Dkt. No. 13), motion to seal court records pending resolution ("First Motion To Seal") (Dkt. No. 15), combined emergency supplemental filing, renewed motion for expedited discovery, and memorandum in support based on newly discovered evidence of systematic fraud and admissions by silence ("Renewed Motion For Discovery") (Dkt. No. 16), motion to declare state court proceedings void for lack of jurisdiction and to proceed on federal claims ("Motion To Declare Proceedings Void") (Dkt. No. 17); and emergency motion for immediate sealing of court records, preservation of database entries, return of funds, and reservation of right to seek removal after final judgment or settlement (Dkt. No. 21) ("Second Motion To Seal"). Lange also filed a supplemental memorandum on malicious prosecution, pattern of fraud, and continuing constitutional violations ("First Supplemental Memo") (Dkt. No. 18), supplemental memorandum on the inapplicability of *Heck v. Humphrey*, request for expedited discovery, and request for finding of factual innocence ("Second Supplemental Memo") (Dkt. No. 19), notice of ongoing state court fraud and continuing RICO pattern ("Notice of Fraud") (Dkt. No. 20), motion for leave to file supplemental complaint ("Motion to Supplement Complaint") (Dkt. No. 22), and motion for emergency intervention,

injunctive relief, and request for judicial notice ("Motion for Emergency Intervention") (Dkt. No. 23). For the following reason, the Court denies Lange's motions (Dkt. Nos. 13–17; 21–23).

**I. Background**

Lange brought this action on December 30, 2025, and alleged violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c), (d) ("RICO"); a conspiracy to deprive civil rights in violation of 42 U.S.C. § 1985(3); "Malicious prosecution, Fabrication of Evidence, Conscience-Shocking Abuse of Process, [and] Retaliatory Prosecution" pursuant to 42 U.S.C. § 1983; and state law claims including "Civil Conspiracy, Malicious Prosecution, Fraud, Conversion, Tortious Interference with Business Expectancy, [and] Intentional Infliction of Emotional Distress" (Dkt. No. 2, at 2). The Court summarizes the factual allegations in Lange's then-operative complaint as follows.

First, Lange alleged that, almost ten years ago, Hennepin County, Minnesota ("Hennepin County"), officials subjected Lange "to a malicious prosecution built on suppressed evidence" (*Id.*, at 12). Lange asserted that the "original complainant[']s brother was a jailed white supremacist in Florida, convicted of murdering two black men" (*Id.*). Lange alleged that Hennepin County prosecutor Thomas Braesch manipulated Lange's race on warrants "to hide this racially-tainted fraud" by listing Lange as white (*Id.*, at 12–13). Lange describes himself as black (*Id.*, at 2). Lange then asserted that, after he entered a plea under duress, prosecutors "retaliatorily added six new felony charges to ensure a prison sentence" (*Id.*, at 13). Lange alleged that, while Lange was in custody, his personal computer was seized and returned wiped clean, which previously held the sole digital copy of his exculpatory evidence (*Id.*).

Second, Lange alleged that, in 2020, "upon discovering an illegally filed Washington County case," Lange's business partner Carly Williams demanded that Lange surrender his 40%

ownership stake in "Luxury Laser Minnesota / MedSpa Institute of America," a company valued at $10 million (*Id.*). Upon Lange's refusal to surrender his ownership stake, Lange alleged that Williams filed a false police report which "led to a campaign of police harassment" (*Id.*). Lange asserted that "[t]his pattern of weaponizing legal process extended to other major projects including the deliberate collapse of a $20 million wedding venue development . . . and the ruin of a $450,000 real estate project" (*Id.*, at 14).

Third, Lange alleged that, on December 8, 2023, Fonce Chevalier Holding, L.L.C. ("Fonce Holdings") entered a valid real estate contract with Theresa White (*Id.*, at 9). Lange purports to be the managing member of Fonce Holdings (*Id.*). Lange then stated that White materially breached the contract with Fonce Holdings by failing to move her property into the required trust, refusing to allow showings by the company-secured realtor Brandon Bruning, and demanding an $82,000.00 last-minute design change (*Id.*). According to Lange, the contract explicitly required White to transfer her property into a designated trust "as a fundamental condition precedent," but White willfully and deliberately refused to take this step (*Id.*). Lange asserted that, because of White's breach, Fonce Holdings had the lawful right to retain a $58,000.00 deposit as a remedy for the breach (*Id.*, at 10).

Lange alleged that, after the breach, Keith Hines—acting at White's behest—filed a false police report which accused Lange of theft (*Id.*). Lange asserted that Fulton County, Arkansas ("Fulton County"), investigator John Hutchins obtained a bank record titled "Fonce Chevalier Holdings, L.L.C." that had a notation of "NO DBA GIVEN" (*Id.*). Lange alleged that Hutchins and Fulton County prosecutors Dwayne Plumlee and Drew Smith suppressed this evidence when they prosecuted him (*Id.*). Lange also alleged that Fulton County officials created a second warrant that changed his race from white to black (*Id.*).

While Lange was released on bail, Lange alleged that the Fulton County Court—at the urging of Plumlee and/or Smith—held Lange in contempt for the actions of his court-appointed attorney (*Id.*, at 11). Lange stated that he was then held an additional 45 days for the "race-changed warrant" (*Id.*). Lange alleged that Plumlee timed the arrest for March 7, 2024, which was one day before the closing of a $34 million Cherokee Village development ("Cherokee Village Development") (*Id.*). Lange claimed that he was in Minnesota at the time of his arrest—assisting his elderly parents—and that Plumlee lied to a Minnesota court by stating that Lange had "fled Arkansas," securing Lange's extradition to Arkansas (*Id.*).

Lange alleged that, while Lange was incarcerated, his contract with White was rendered void and that on April 7, 2024—approximately four weeks after Lange's arrest—White was under contract to sell her property to someone else (*Id.*, at 12). Lange alleged that the realtor of record for that transaction was Burning, the realtor Fonce Holdings had secured for her (*Id.*). Lange asserted that White realized a profit of $166,000.00 from the sale and received her initial $58,000.00 deposit as a result of a restitution order entered against Lange (*Id.*).

After considering Lange's claims, this Court entered an Order, finding that Lange's § 1983 claims were barred pursuant to *Heck v. Humphrey*, 512 U.S. 477, 486–78 (1994) (Dkt. No. 11, at 6–7) and that Lange failed to state a claim upon which relief could be granted under RICO and § 1985 (*Id.*, at 7–11). This Court then declined to exercise supplemental jurisdiction over Lange's state law claims (*Id.*, at 11–12) and denied Lange's motions for a preliminary injunction (*Id.*, at 12–14). Having dismissed or declined to exercise supplemental jurisdiction over Lange's claims, the Court entered a Judgment in this case (Dkt. No. 12).

## II. Motion For Reconsideration And To Amend Complaint

### A. Legal Standards

### 1. Motion To Amend

"[A] motion for leave to amend after dismissal is subject to different considerations than a motion prior to dismissal." *Alleruzzo v. SuperValu, Inc. (In re SuperValu, Inc.)*, 925 F.3d 955, 961 (8th Cir. 2019) (quoting *Mountain Home Flight Serv., Inc. v. Baxter Cnty*., 758 F.3d 1038, 1045 (8th Cir. 2014)). "Leave to amend should be granted liberally under Rule 15 prior to dismissal." *Id.* "After judgment has been entered, district courts may not ignore the considerations of Rule 15, but leave to amend a pleading will be granted only 'if it is consistent with the stringent standards governing the grant of Rule 59(e) and Rule 60(b) relief.'" *Id.* (quoting *United States v. Mask of Ka-Nefer-Nefer*, 752 F.3d 737, 743 (8th Cir. 2014)). "Even if a dismissal is without prejudice, if the court intended the decision to be a final, appealable order, it constitutes dismissal of the entire action, and the more stringent postjudgment standards apply." *Id.*

### 2. Motion For Reconsideration

"A 'motion for reconsideration' is not described in the Federal Rules of Civil Procedure, but such a motion is typically construed either as a Rule 59(e) motion to alter or amend the judgment or as a Rule 60(b) motion for relief from judgment." *Peterson v. The Travelers Indem. Co.*, 867 F.3d 992, 997 (8th Cir. 2017) (quoting *Auto Servs. Co. v. KPMG, LLP*, 537 F.3d 853, 855 (8th Cir. 2008)).

"A district court has broad discretion in determining whether to grant or deny a motion to alter or amend judgment pursuant to Rule 59(e), and th[e] [appeals] court will not reverse absent a clear abuse of discretion." *United States v. Metro. St. Louis Sewer Dist.*, 440 F.3d 930, 933 (8th Cir. 2006) (citing *Innovative Home Health Care v. P. T.-O. T. Assoc. of the Black Hills*, 141 F.3d 1284, 1286 (8th Cir. 1998)). "It should be noted that Rule 59(e) motions serve the limited function of correcting manifest errors of law or fact or to present newly discovered evidence." *Metro St.*

*Louis*, 440 F.3d at 933 (internal quotation omitted). "Such motions cannot be used to introduce new evidence, tender new legal theories, or raise arguments which could have been offered or raised prior to entry of judgment." *Id.* (internal quotation omitted).

> To succeed on a Rule 59(e) motion based on newly discovered evidence, the movant must show: (1) that the evidence was discovered after the court's order, (2) that the movant exercised diligence to obtain the evidence before entry of the order, (3) that the evidence is not merely cumulative or impeaching, (4) that the evidence is material, and (5) that the evidence would probably have produced a different result.

*Ryan v. Ryan*, 889 F.3d 499, 508 (8th Cir. 2018).

Under Rule 60(b), the Court may relieve a party from an order on the narrow grounds of:

> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>
> (4) the judgment is void;
>
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).

Rule 60(b) "provides for extraordinary relief which may be granted only upon an adequate showing of exceptional circumstances." *Jones v. Swanson*, 512 F.3d 1045, 1048 (8th Cir. 2008) (quoting *United States v. Young*, 806 F.2d 805, 806 (8th Cir. 1986)); *see also In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, 496 F.3d 863, 866 (8th Cir. 2007) ("[R]ule 60(b) authorizes relief in only the most exceptional of cases." (internal citations omitted)); *United States v. One Parcel of Property Located at Tracts 10 & 11 of Lakeview Heights, Canyon Lake, Comal*

*Cnty., Tex.*, 51 F.3d 117, 120 (8th Cir. 1995) (concluding that a motion to reconsider filed under Rule 60(b) requires the moving party to establish "exceptional circumstances" to obtain the extraordinary relief the rule provides).

As it pertains to Rule 60(b)(6), the Eighth Circuit has provided the following guidance:

> Relief is available under Rule 60(b)(6) only where "exceptional circumstances prevented the moving party from seeking redress through the usual channels." *In re Zimmerman*, 869 F.2d 1126, 1128 (8th Cir. 1989). . . . "Exceptional circumstances" are not present every time a party is subject to potentially unfavorable consequences as a result of an adverse judgment properly arrived at. Rather, exceptional circumstances are relevant only where they bar adequate redress.

*Atkinson v. Prudential Prop. Co.*, 43 F.3d 367, 373 (8th Cir. 1994).

Rule 60(d)(3) states that the Court may "set aside a judgment for fraud on the court." Fed. R. Civ. P. 60(d)(3). "Fraud on the court which justifies vacating a judgment is narrowly defined as fraud which is directed to the judicial machinery itself and is not fraud between the parties or fraudulent documents, false statements or perjury." *United States v. Smiley*, 553 F.3d 1137, 1144 (8th Cir. 2009) (internal citations omitted). "A finding of fraud on the court under this standard 'is justified only by the most egregious misconduct directed to the court itself, such as bribery of a judge or jury or fabrication of evidence by counsel . . . .'" *Id.* (quoting *Greiner v. City of Champlin*, 152 F.3d 787, 789 (8th Cir. 1998)).

**B. Summary Of Lange's Filings**

**1. Amended Complaint And Motion To Supplement Complaint**

In Lange's amended complaint, Lange realleges his RICO and § 1985(3) claims (Dkt. No. 14, at 59–61), alleges a violation of the Fourteenth Amendment's Equal Protection Clause (*Id.*, at 56–57), and asserts that Washington County, Minnesota ("Washington County"), Ramsey County, Minnesota ("Ramsey County"), Sherburne County, Minnesota ("Sherburn County"), and Anoka

County, Minnesota ("Anoka County"), are liable for constitutional violations under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978) (*Id.*, at 57).

In Lange's amended complaint, Lange realleges his original claim that Hennepin County and prosecutor Breasch—along with other named defendants and non-parties—manipulated Lange's race on warrants by listing Lange as white (*Id.*, at 3, 5–7, 10–11). Lange also realleges that Hines filed a false police report at White's behest and that prosecutor Plumlee improperly prosecuted him and suppressed evidence (*Id.*, at 7–19).

Lange's amended complaint raises new allegations that "Officer Jagodzinski" was the officer who obtained the warrant which erroneously listed Lange as white and that Washington County transmitted the "false white warrant" to Ramsey County, Hennepin County, Sherburne County, and Anoka County (Dkt. No. 14, at 3, 5–7). Lange also alleges that Jagodzinski and Washington County are involved in "with[olding] exculpatory evidence that the complainant's brother was convicted of murdering two black men as part of a white supremacist organization" (*Id.*, at 2), and Lange alleges that Jagodzinski and Washington County are involved in an illegal enterprise with other named defendants and non-parties based on their "transmission" of the warrant (*Id.*, at 7–9). Additionally, Lange alleges that Ramsey County filed "additional felony charges (taxes) against [Lange]" (*Id.*, at 9).

Lange alleges that Hennepin County family court conducted a custody proceeding regarding his minor daughter on July 11, 2024, while he was incarcerated in Arkansas and that Lange currently has an emergency "rule 60.02 motion to vacate" pending in that court (*Id.*, at 25–32). Lange alleges that he has referred the conduct in the amended complaint to the Federal Bureau of Investigation (*Id.*, at 32–33). Lange also makes various statements about issues concerning the general public in Minnesota, including a settlement recognizing "patterns of racial discrimination

in law enforcement" (*Id.*, at 35), racial covenants restricting property ownership (*Id.*, at 37), and an "active federal investigation for massive fraud involving public funds" (*Id.*, at 40).

Lange alleges that, on February 9, 2026, he was out of state and did not appear for his court date (*Id.*, at 19). Lange alleges that he filed a "Notice of Constructive Appearance" on February 9, 2026, at 9:30 a.m. and that despite his notice, the Fulton County Circuit Court denied his motion to withdraw his guilty plea, stating that Lange failed to appear for his court date after receiving proper notice (*Id.*, at 19, 42–44). Lange alleges that prosecutor Drew Smith drafted the order (*Id.*, at 19, 44; *see also* Dkt. No. 13, at 28–29). Lange also alleges that Judge Weaver "hates him" and is biased against him (*Id.*, at 20, 47, 57).

Lange alleges "fraud upon the Court" because: (1) a warrant was issued against him on May 3, 2024, in Hennepin County three hours before his court date which "ensured [McKinney] could not appear" and "created a false record of 'failure to appear'" (*Id.*, at 24–25); (2) the state court had no jurisdiction over his prosecution because the warrant was obtained through "false testimony, suppressed exculpatory evidence, and the intentional false racial designation" (*Id.*, at 42–43); and (3) the mother of his child remained silent after Lange informed her that her testimony in a family court proceeding was false (*Id.*, at 30). Lange alleges that the "resulting judgments" are void as a result of fraud on the court and thus his case is not barred by *Heck* (*Id.*, at 42). Lange further alleges that his case is not barred by *Heck* because he has no route other than a § 1983 damages action to challenge his conviction (*Id.*, at 45).

Finally, Lange alleges that this Court's Order incorrectly states that he pled guilty in Arkansas state court on October 10, 2025, and that the actual date was October 20, 2025 (*Id.*, at 46). Lange acknowledges that the judgment in his state case states that he pled guilty on October 10, 2025 (*Id.*; *see also* Dkt. No. 16, at 27).

In his recently filed Motion to Supplement Complaint, Lange cites Federal Rule of Civil Procedure 15(d) and asserts that, due to events he describes that he contends occurred after the filing of his amended complaint, the Court should give him leave to file another amended complaint to include "all claims in one proceeding." (Dkt. No. 22, at 3). The events Lange describes seem connected, related to, or like the events about which he complained in his amended complaint. Further, Lange claims that the events he sets out "demonstrate a continuing pattern of obstruction, fraud, and constitutional violations." (*Id.*, at 3).

**2. Motion For Discovery**

In Lange's Motion for Discovery, Lange realleges that this Court's Order incorrectly states that he pled guilty in Arkansas state court on October 10, 2025, and that the actual date was October 20, 2025 (Dkt. No. 13, at 1–4). Lange alleges that the date discrepancy amounts to wire fraud, mail fraud, and is evidence of a racketeering enterprise (*Id.*, at 2). Lange then realleges the facts and arguments laid out in his amended complaint (*Id.*, at 5–11). Lange also alleges that Plumlee and Smith committed a felony by failing to correct the warrant which listed Lange as white (*Id.*, at 6–7).

Lange attached documents to his Motion for Discovery which he states are "numerous public records and court documents including warrants from Minnesota and Arkansas . . . court records. . . the October 20, 2025[,] judgment . . . the February 9, 2026[,] order drafted by Defendant Smith, the . . . Hennepin County warrant, and the . . . Hennepin County Family Court custody order" (*Id.*, at 11). Lange asks the Court to take judicial notice of these documents (*Id.*, at 11–12). Lange then asks the Court to permit expedited discovery (*Id.*, at 12–16).

The mental health evaluation that Lange attached—the document Lange asserts shows that he is black and that he contends defendants ignored—states that Lange is "Caucasian—whole family white—bio dad was black, bio mom white. Identify as Caucasian male" (*Id.*, at 23).

**3. Renewed Motion For Discovery**

In Lange's Renewed Motion for Discovery, Lange again alleges that the true date he pled guilty was October 20, 2025, rather than October 10, 2025 (Dkt. No. 16, at 1–2).

Lange then alleges "three pillars of newly discovered fraud" (*Id.*, at 2). First, Lange alleges that an order in his Arkansas state court case is file stamped as August 28, 2025, but states in the order that it is in regard to events occurring on September 18, 2025 (*Id.*, at 2; *see also* Dkt. No. 15, at 13). Lange alleges that he was held in contempt of court on September 8, 2025, and was then incarcerated for an additional 43 days, so "[t]he September 18, 2025[,] date referenced in the order never legally occurred" (Dkt. No. 16, at 3).

Second, Lange alleges "six independent acts of fraud in a single case," namely: (1) the warrant which listed him as white; (2) an 11-month delay on an unspecified December 2021 warrant (3); the May 3, 2024, warrant issued the morning of his hearing; (4) the changing of a court record related to his travel permissions; (5) the failure to correct that change; and (6) the status of that case being listed as "dormant" but also listing an active warrant (*Id.*, at 3–7).

Third, Lange alleges that—in an unspecified case—the state of Arkansas continues to list "the alleged crime date as March 6, 2024," despite a bank record which shows that a wire transfer was made on December 8, 2023 (*Id.*, at 8). Lange alleges that this is fraud upon the court (*Id.*).

Lange realleges his claims regarding non-party Carly Williams, makes arguments regarding letters he sent to Williams and non-party Mike Steadman, and makes allegations regarding business disputes between himself and those non-parties (*Id.*, at 9–24, 27–31). Lange

also realleges facts related to "[t]he Cherokee Village Development," which Lange alleges fell apart because of White's police report and Plumlee's subsequent prosecution of Lange (*Id.*, at 24–27). Lange then requests damages between or exceeding $600 million to $800 million (*Id.*, at 27–33) and requests expedited discovery (*Id.*, at 34).

**4. Motion To Declare Proceedings Void**

Lange alleges in his Motion to Declare Proceedings Void that the state courts in Minnesota and Arkansas never had jurisdiction over him and that, therefore, the warrants, proceedings, and judgments in those proceedings are invalid and do not trigger *Heck* (Dkt. No. 17, at 1). Lange then repeats his claims made in his previous filings (*Id.*, at 1–7). Lange asks the Court to declare that the Minnesota and Arkansas state court proceedings are void and do not trigger *Heck* (*Id.*, at 7–8).

**5. Other Filings**

In Lange's First Supplemental Memo, Lange realleges his claims that: Lange was maliciously prosecuted with a false warrant which listed Lange as white; Lange's exculpatory evidence was destroyed; the Minnesota counties "spread" the fraud by transmitting the warrant; Ramsey County "manufacture[d] additional felonies"; Plumlee's prosecution of Lange was "manufactured" at White's behest; Smith and Judge Weaver should have been disqualified from his criminal proceeding; the Minnesota family court acted fraudulently in his custody proceeding; and the state courts did not have jurisdiction over his proceedings (Dkt. No. 18, at 1–14).

In Lange's Second Supplemental Memo, Lange alleges that he "present[s] new evidence that was not before the Court at the time of its February 12, 2026[,] Order" (Dkt. No. 19, at 1), but then later specifies that "[t]his is not a motion to reconsider" (*Id.*, at 19). Lange then realleges the facts regarding his state prosecutions (*Id.*, at 2–9), argues that Minnesota and Arkansas's conduct

related to these proceedings constitutes 24,704 separate felonies (*Id.*), and realleges that the state court proceedings are void (*Id.*, at 9–19). Lange then asks for expedited discovery (*Id.*, at 19–21).

In Lange's Notice of Fraud, Lange alleges "ongoing conduct in Hennepin County Family Court that continues the pattern of fraud and racketeering" (Dkt. No. 20, at 1). Lange then complains that the family court ignored his arguments, ignored certain issues, and improperly ruled against him (*Id.,* at 1–4).

### C. Analysis

Lange purports to file his proposed amended complaint as a matter of right pursuant to Federal Rule of Civil Procedure 15(a)(1)(B) (Dkt. No. 14, at 1). However, Judgment has already been entered in this case (Dkt. No. 12). The Court therefore assesses Lange's amended complaint (Dkt. No. 14), along with his Motion to Supplement Complaint (Dkt. No. 22), Motion for Discovery (Dkt. No. 13), Renewed Motion for Discovery (Dkt. No. 16), Motion To Declare Proceedings Void (Dkt. No. 17), First Supplemental Memo (Dkt. No. 18), Second Supplemental Memo (Dkt. No. 19), and Notice of Fraud (Dkt. No. 20) collectively as a motion for reconsideration under Rule 59(e) and 60(b) standards. *Alleruzzo*, 925 F.3d at 961.

#### 1. Rule 59(e)

The Court denies Lange's motion for reconsideration pursuant to Rule 59(e) because Lange has not shown any manifest error of law or fact in the Court's Order dismissing his case, nor has Lange presented newly discovered evidence which entitles Lange to relief under Rule 59(e).

As to a manifest error of law, Lange argues that his claims are not barred by *Heck* because his conviction is "void" and because he claims to have no other route to challenge his conviction (Dkt. No. 14, at 42, 45; 17, at 1–8; 18, at 14; 19, at 9–19). The Court disagrees. Lange's § 1983 claims—in both Lange's complaint and his subsequent Motion for Reconsideration—relate to the

validity of his state conviction, and a judgment in favor of Lange on these claims would necessarily imply the invalidity of the state conviction, continued imprisonment, or sentence (*See* Dkt. No. 11, at 6). *Heck*, 512 U.S. at 486–78. Lange appears to be in the process of appealing his conviction in state court and has not shown that his conviction has been vacated, expunged, or called into question by the issuance of a federal writ of habeas corpus. *See* Notice of Appeal, *State v. David Andrew Lange*, 25CR-24-20 (Fulton Cnty. Cir. Ct. Feb. 9, 2026). Lange's claims are barred by *Heck.* Thus, Lange asserts no manifest error of law which entitles Lange to relief under Rule 59(e).

Lange also purports to add an equal protection claim and *Monell* claims to his suit, which Lange asserts are not barred by *Heck* (Dkt. No. 14, at 56, 58, 63). As to Lange's equal protection claim, Lange alleges that the violation of equal protection occurred when: defendants designated him as white on a warrant; Jagodzinski withheld evidence of a "white supremacist murder conviction"; Smith "admitted judicial animus ('hates him')"; and Hennepin County executed a warrant and allowed "its Family Court to enter a fraudulent custody order without notice" (Dkt. No. 14, at 56–57).

As an initial matter, motions to amend after dismissal "will only be granted 'if it is consistent with the stringent standards governing the grant of Rule 59(e) and Rule 60(b) relief.'" *Alleruzzo*, 925 F.3d at 961 (quoting *Mask of Ka-Nefer-Nefer*, 752 F.3d at 743). A Rule 59(e) motion "cannot be used to introduce new evidence, tender new legal theories, or raise arguments which could have been offered or raised prior to the entry of judgment." *Metro St. Louis*, 440 F.3d at 933. Lange makes no argument regarding why these claims were not raised prior to the entry of Judgment in this case. Therefore, the Court determines that these claims are insufficient to entitle Lange to relief under Rule 59(e).

Moreover, permitting the requested amendment would be futile in this case. Lange makes no allegation that anyone who is similarly situated was treated differently than Lange. *Carter v. Arkansas*, 392 F.3d 965, 968 (8th Cir. 2004) (determining that "[t]to state an equal protection claim, appellant must have established that he was treated differently from others similarly situated to him.") (quoting *Johnson v. City of Minneapolis*, 152 F.3d 859, 862 (8th Cir. 1998)). Therefore, Lange fails to state a claim upon which relief can be granted for his equal protection claim, and such an amendment would be futile.

As to Lange's *Monell* claims, Lange alleges that Washington County, Ramsey County, Anoka County, Hennepin County, and Fulton County are liable for the "false racial designation," issuing orders that contained the error, and participating in a conspiracy of spreading this error (Dkt. No. 14, at 57–58). Lange's § 1983 claims arising from alleged conduct by individuals and entities are barred by *Heck*. As to his other underlying claims, Lange fails to state a claim upon which relief can be granted. Given this, Lange also fails to state a claim upon which relief can be granted as to *Monell* liability, and such an amendment to permit him to assert such claims would be futile. *Whitney v. City of St. Louis*, 887 F.3d 857, 861 (8th Cir. 2018) (explaining that, "absent a constitutional violation by a city employee, there can be no § 1983 or *Monell* liability for the City"). Because permitting Lange to amend to add equal protection and *Monell* claims would be futile, such claims do not entitle Lange to relief under Rule 59(e).

As to any manifest error of fact, the only factual error which Langes alleges that the Court made is listing the date he pled guilty in Arkansas state court as October 10, 2025, rather than October 20, 2025 (Dkt. No. 14, at 46; 13, at 1–4). The evidence Lange submitted reflects both dates (Dkt. No. 13, at 24–27). Even if Lange pled guilty on October 20, 2025, rather than October 10, 2025, a change in the date Lange pled guilty has no impact on the Court's reasoning in its

Order and Judgment (Dkt. Nos. 11; 12). *See Gibson v. Hadzic*, Case No. 4:22-cv-00163-SPM, 2023 WL 8697785, at 2 (E.D. Mo. Dec. 15, 2023) (denying a Rule 59(e) motion after acknowledging the Court's order erroneously said that plaintiff "refused to leave" rather than "did not leave" when the phrase did not impact the Court's conclusion). Thus, Lange asserts no manifest error of fact which entitles him to relief under Rule 59(e).

As to newly discovered evidence, Lange filed this case on December 30, 2025 (Dkt. No. 2), subsequently filed several motions (Dkt. Nos. 3–10), and the Court entered its Order and Judgment on February 12, 2026 (Dkt. Nos. 11; 12). Although Lange alleges additional facts, expands his claims, and names new defendants, a Rule 59(e) motion for reconsideration "cannot be used to introduce new evidence, tender new legal theories, or raise arguments which could have been offered or raised prior to the entry of judgment." *Metro St. Louis*, 440 F.3d at 933. The majority of Lange's additional facts—including Lange's "three pillars of newly discovered fraud" (Dkt. No. 16, at 2) and the "new evidence" in Lange's Second Supplemental Memo—relate to events occurring before Lange filed this lawsuit (*See* Dkt. Nos. 13; 14; 16; 17). Lange gives no explanation as to why these additional facts could not have been offered prior to the entry of Judgment, nor does Lange make any showing that Lange exercised diligence to obtain such evidence before the entry of the Court's Order.

The only facts which Lange alleges to have occurred after entry of judgment in this case—and thus could not have been discovered prior to entry of judgment—are the events and filings related to the February 9, 2026, court date (Dkt. No. 14, at 18–19, 42–44), and the March 30, 2026, order in Lange's family court case (Dkt. No. 20, at 2–4). Neither the event—nor the filings related to the court dates and order—would "probably have produced a different result" in the Court's Order, *Ryan*, 889 F.3d at 507, because those facts do not change that: (1) Lange's § 1983 claims

are barred by *Heck*; (2) Lange fails to plead sufficiently a RICO claim under Rule 9(b)'s heightened pleading standard; and (3) Lange fails to plead sufficiently a § 1985(3) claim showing class-based, invidiously discriminatory animus and specific factual support to suggest a meeting of the minds (*See* Dkt. No. 11, at 6–11). Thus, Lange is not entitled to relief under Rule 59(e) on the basis of newly discovered evidence.

For these reasons, the Court denies Lange's Motion for Reconsideration pursuant to Rule 59(e) (Dkt. Nos 13; 14; 16; 17).

**2. Rule 60(b)**

The Court also denies Lange's motion for reconsideration pursuant to Rule 60(b). In Lange's Motion for Reconsideration, Lange does not allege mistake, inadvertence, surprise, or excusable neglect, that the Judgment *in this case* is void, or that the Judgment has been satisfied, released, or discharged. Fed. R. Civ. P. 60(b)(1), (4), (5) (emphasis added).

As previously discussed, although Lange alleges new facts and expands upon his original claims, Lange makes no claim—including in his "three pillars of newly discovered fraud" (Dkt. No. 16, at 2) and the "new evidence" in Lange's Second Supplemental Memo—that such evidence could not have been discovered with reasonable diligence. Most of Lange's additional factual allegations relate to events which happened before Lange filed this suit, and Lange gives no explanation as to why any such factual allegation could not have been discovered prior to the time allotted in Rule 60(b)(2). Fed. R. Civ. P. 60(b)(2).

Lange's arguments regarding fraud by defendants are the same as those Lange alleged in his original complaint related to his RICO and §1985(3) claims (*See* Dkt. No. 2). To the extent Lange alleges new acts of fraud, misrepresentation, or misconduct by defendants, the Court finds

that Lange has not made "an adequate showing of exceptional circumstances" which would entitle him to relief under Rule 60(b)(3) or Rule 60(b)(6). *Jones*, 512 F.3d at 1048.

For these reasons, the Court denies Lange's Motion for Reconsideration pursuant to Rule 60(b) (Dkt. Nos 13; 14; 16; 17).

**3. Rule 60(d)**

Lange's allegations of "fraud upon the court" also do not entitle Lange to relief under Rule 60(d)(3). Lange's allegations relate to actions taken in other courts and are not the "the most egregious misconduct" directed at this Court which would entitle Lange to relief under Rule 60(d) (Dkt. Nos. 14, at 24–25, 30, 42–43; 16, at 8). Therefore, the Court denies Lange's Motion for Reconsideration pursuant to Rule 60(d)(3) (Dkt. Nos 13; 14; 16; 17).

## III. Discovery Related Requests

In several of Lange's motions, Lange requests that the Court rule on discovery issues or expedite discovery in this case (*See* Dkt. Nos. 14, at 53–55; 15, at 12–17; 16, at 34, 36; 19, at 19–21). Given that the Court has dismissed without prejudice Lange's claims—and now denies what the Court considers to be his motion for reconsideration—discovery in this matter is not appropriate at this time. The Court, therefore, denies Lange's discovery-related requests (Dkt. Nos. 14; 15; 16; 19).

## IV. Motions To Seal

### A. Legal Standard

"Generally speaking, there is a common-law right of access to judicial records, but that right is not absolute." *Flynt v. Lombardi*, 885 F.3d 508, 511 (8th Cir. 2018) (citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589 (1978); *IDT Corp. v. eBay*, 709 F.3d 1220, 1222 (8th Cir. 2013)). "This right of access bolsters public confidence in the judicial system by allowing citizens

to evaluate the reasonableness and fairness of judicial proceedings, and 'to keep a watchful eye on the workings of public agencies.'" *IDT Corp.*, 709 F.3d at 1222 (quoting Nixon, 435 U.S. at 598) (internal citation omitted). "The decision whether to seal a judicial record is left to the sound discretion of the trial court 'in light of the relevant facts and circumstances of the particular case.'" *Wishah v. City of Country Club Hills*, Case No. 4:19-cv-03410-SRC, 2021 WL 3860328, at 2 (E.D. Mo. Aug. 30, 2021) (quoting *Nixon*, 435 U.S. at 599). "Where the common-law right of access is implicated, the court must consider the degree to which sealing a judicial record would interfere with the interests served by the common-law right of access and balance that interference against the salutary interests served by maintaining confidentially of the information sought to be sealed." *IDT Corp*., 709 F.3d at 1223. "The presumption of public access to judicial records may be overcome if the party seeking to keep the records under seal provides compelling reasons for doing so." *Flynt*, 885 F.3d at 511 (citing *In re Neal*, 461 F.3d 1048, 1053 (8th Cir. 2006)).

**B. Analysis**

In Lange's First Motion to Seal, Lange requests that the Court seal "all records in this case pending final resolution" (Dkt. No. 15, at 1). Lange alleges that this case should be sealed because his criminal history is a product of fraud upon the Court and because "records were obtained through false testimony, withheld exculpatory evidence, intentional false racial designations, and manufactured warrants" (*Id.*, at 2). Lange alleges that fraudulent entries in public records will appear in his background checks and prevent him from returning to his previous income level (*Id.*). In Lange's Second Motion to Seal, Lange asks the Court to seal this Court's records (Dkt. No. 21, at 9).

First, to the extent Lange asks the Court to seal records located in Arkansas or Minnesota state courts—or anywhere besides the United States District Court of the Eastern District of

Arkansas—this Court lacks authority to do so. Second, Lange has not articulated compelling reasons to overcome the presumption of public access to judicial records. *Flynt*, 885 F.3d at 511. The records that Lange alleges to be fraudulent are state court orders, filings, and docket sheets (*See* Dkt. Nos. 6, 14–44; 10, at 11–24; 13, at 24–41; *see also* Dkt. No. 13, at 11 (stating that the documents are "public records and court documents")). Lange makes no representations that any of these documents are under seal in state court. The Court finds that Lange has not articulated compelling reasons to overcome the presumption of public access to judicial records. Therefore, the Court denies Lange's First Motion To Seal (Dkt. No. 19) and Second Motion To Seal (Dkt. No. 21).

Because the Court denies Lange's requests to seal his filings and denies Lange's Motion for Reconsideration, the Court also denies Lange's request in his Second Motion to Seal that the Court: (1) "order the Arkansas Crime Information Center and Minnesota Bureau of Criminal Apprehension to preserve all records related to [Lange] and to flag such records as subject to pending litigation"; (2) order "the immediate return of the $15,800 unlawfully held by the State of Arkansas"; and (3) order Defendants to "preserve all records related to their access of ACIC and NCIC concerning [Lange]" (Dkt. No. 21, 7–9).

**V. Motion For Emergency Intervention**

**A. Legal Standard**

The Court considers Lange's Motion for Emergency Intervention to be a request for a temporary restraining order or preliminary injunction, subject to the analysis of Federal Rule of Civil Procedure 65 (Dkt. No. 23). "A preliminary injunction is an 'extraordinary' equitable remedy that is 'never awarded as of right.'" *Starbucks Corp. v. McKinney*, 602 U.S. 339, 345 (2024) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)). "The substantive

prerequisites for obtaining an equitable remedy as well as the general availability of injunctive relief . . . depend on traditional principles of equity jurisdiction." *Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 318–19 (1999) (citation and modification omitted). A plaintiff must establish four factors to obtain a preliminary injunction: (1) "that he is likely to succeed on the merits"; (2) "that he is likely to suffer irreparable harm in the absence of preliminary relief"; (3) "that the balance of equities tips in his favor"; and, (4) "that an injunction is in the public interest." *Winter*, 555 U.S. at 20. *See Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc) (same factors).

**B. Analysis**

In his Motion for Emergency Intervention, Lange makes clear that this "is not an appeal." (Dkt. No. 23, at 1). Instead, he states this "is a § 1983 civil rights, RICO, and hate crime case." (*Id.*). A focus of his request for relief is his argument that he "is not asking this Court to review any state court orders because there are no valid state court orders to review," according to Lange (*Id.*). He argues against *Rooker-Feldman*, *Younger* abstention, and the application of *Heck* (*Id.*, at 2, 5–7). He focuses on 20 points in his request for relief from this Court and demands a jury trial (*Id.*, at 10-12). Lange has not met his burden under the four factors this Court is to consider when determining whether to grant a preliminary injunction; Lange is not entitled to this Court's emergency intervention, a temporary restraining order, or a preliminary injunction. For these reasons, his Motion for Emergency Intervention is denied (Dkt. No. 23).

**VI. Conclusion**

For the foregoing reasons, the Court denies all of Lange's motions that the Court construes as his motion for reconsideration, including Lange's amended complaint (Dkt. No. 14), Motion to Supplement Complaint (Dkt. No. 22), Motion for Discovery (Dkt. No. 13), Renewed Motion for

Discovery (Dkt. No. 16), Motion To Declare Proceedings Void (Dkt. No. 17), First Supplemental Memo (Dkt. No. 18), Second Supplemental Memo (Dkt. No. 19), and Notice of Fraud (Dkt. No. 20). The Court also denies his First Motion To Seal (Dkt. No. 15), Second Motion To Seal (Dkt. No. 21), and Motion For Emergency Intervention (Dkt. No. 23).

It is so ordered this 14th day of September, 2026.

Kristine G. Baker
Chief United States District Judge